UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YANDY ERNESTO MACHIN-ROSAL,<br><br>                  Petitioner,<br><br>v.<br><br>MARKWAYNE MULLIN, et al.,<br><br>                  Respondents. | Case No.:  3:26-cv-02796-RBM-AHG<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS**<br><br>**[Docs. 3, 9]** |

Pending before the Court are Petitioner Yandy Ernesto Machin-Rosal's ("Petitioner") First Amended Petition for Writ of Habeas Corpus ("Amended Petition") (Doc. 9) pursuant to 28 U.S.C. § 2241 and Motion for Temporary Restraining Order ("TRO Motion") (Doc. 3).  The Amended Petition and TRO Motion seek the same relief: Petitioner's release from detention and an order enjoining Respondents from removing Petitioner to a third country unless they provide him with written notice and a meaningful opportunity to raise fear-based claims.  (Doc. 9 at 16–17; Doc. 3 at 3.)  For the reasons set forth below, the Petition is **GRANTED in part** and **DENIED in part**.

## I.    BACKGROUND

### A.    Factual Background

Petitioner is a citizen of Cuba who came to the United States in 2009 and became a lawful permanent resident.  (Doc. 9-1 [Decl. of Yandy Ernesto Machin-Rosal ("Machin-Rosal Decl.")] ¶¶ 1–2; Doc. 11-1 at 4.)  Between June 14, 2019 and February 5, 2025, Petitioner was arrested for the following: "False Statement to Obstruct Police;" "Use/Possess Drug Paraphernalia;" "Possess/Receive Stolen Vehicle;" "Battery Domestic

Violence;" "Trespass (dismissed);" "False Statement to Obstruct Police Officer;" "Battery with a Deadly Weapon and Conspiracy to Commit Battery with a Deadly Weapon." (Doc. 11-1 at 4.)

On November 3, 2025, Petitioner was ordered removed to Cuba. (Doc. 11-1 at 7–10.) On November 17, 2025, Petitioner was physically removed to Mexico. (Doc. 11-1 at 12.) Petitioner attests that he "was sent to the border with Mexico and forced to walk across the border." (Machin-Rosal Decl. ¶ 5.) Petitioner was kidnapped while in Mexico and later reentered the United States. (*Id.* ¶¶ 5–6.) On January 16, 2026, Border Patrol agents encountered Petitioner near Boulevard, California and determined that he had illegally re-entered the United States. (Doc. 11-1 at 3–4.) Petitioner was "referred for prosecution under 8 U.S.C. § 1326(a)." (*Id.* at 4.) On April 10, 2026, "the government moved to dismiss the case against [Petitioner] . . . in the interests of justice," and District Judge Huie granted the motion to dismiss. (Doc. 9 at 3.) After the dismissal, Petitioner was brought back to immigration detention at Otay Mesa Detention Center. (*Id.*)

On April 14, 2026, the Department of Homeland Security issued Petitioner a Notice of Intent / Decision to Reinstate Prior Order under Immigration and Nationality Act § 241(a)(5). (Doc. 11-1 at 12.) On May 15, 2026, Immigration and Customs Enforcement ("ICE") "reinstated the prior removal order as a final order of removal" and placed Petitioner into custody pursuant to 8 U.S.C. § 1231(a). (Doc. 11 at 2; Doc. 11-1 at 14–15.) "ICE is seeking to remove Petitioner to Mexico." (Doc. 11 at 4.)

**B.     Procedural Background**

Petitioner, initially proceeding *pro se*, filed his original Petition (Doc. 1), the TRO Motion (Doc. 3), and a Motion to Appoint Counsel (Doc. 2) on April 30, 2026. The Court appointed Federal Defenders of San Diego, Inc. as counsel and set a briefing schedule. (Doc. 4.) On May 20, 2026, after the Court granted a Joint Motion to Extend the Briefing Schedule (*see* Docs. 7, 8), Petitioner filed his Amended Petition (Doc. 9). On May 27, 2026, Respondents filed their Return to Amended Petition. (Doc. 11.) On June 3, 2026, Petitioner filed his Traverse. (Doc. 12.)

2

3:26-cv-02796-RBM-AHG

## II.   LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). "Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." 28 U.S.C. § 2241(a). The petitioner bears the burden of demonstrating that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." *Id.* § 2241(c)(3).

## III.   DISCUSSION

Petitioner argues that: (1) his detention violates *Zadvydas v. Davis*, 533 U.S. 678 (2001), because there is no significant likelihood of his removal in the reasonably foreseeable future; and (2) due process and the Convention Against Torture ("CAT") prohibit ICE from removing him to a third country "without adequate notice and an opportunity to be heard." (Doc. 9 at 6–16.) Respondents argue that: (1) Petitioner's detention still falls within the 90-day mandatory removal period of 8 U.S.C. § 1231(a); and (2) the third country claims are moot because "ICE is seeking to remove Petition to Mexico not an alternative third country." (Doc. 11 at 1–4.)

For the reasons below, the Court finds that: (1) Petitioner is still mandatorily detained under § 1231 and (2) Respondents must provide Petitioner with adequate notice and an opportunity to be heard before removing him to a third country.

### A.   Removal Period

Section 1231(a) "governs the detention, release, and removal of individuals ordered removed." *Johnson v. Arteaga-Martinez*, 596 U.S. 573, 578 (2022). After the entry of a final removal order, a noncitizen is subject to mandatory detention for 90 days, known as the "removal period." U.S.C. § 1231(a)(1). The removal period begins on the latest of the following: (1) "[t]he date the order of removal becomes administratively final;" (2) "[i]f

3

the removal order is judicially reviewed and if a court orders a stay of the removal of the [noncitizen], the date of the court's final order;" or (3) "[i]f the [noncitizen] is detained or confined . . . , the date the [noncitizen] is released from detention or confinement." § 1231(a)(1)(B).  In the context of reinstated removal orders, the "90-day removal period beg[ins] to run on . . . the date that [a noncitizen's] removal order was reinstated after his reentry into the United States."  *Alva v. Kaiser*, Case No. 25-cv-06676-RFL, 2025 WL 2419262, at *3 (N.D. Cal. Aug. 21, 2025) (citing § 1231(a)(5)); *see also Aguilar Guerrero v. Warden*, Case No. 1:26-cv-2499-TLN-JDP, 2026 WL 1329734, at *2 (E.D. Cal. May 13, 2026) ("Here, the removal period began . . . when petitioner's prior removal order was reinstated."); *Castillo v. Chestnut*, Case No. 1:25-cv-01296-SAB-HC, 2026 WL 121652, at *13 (E.D. Cal. Jan. 16, 2026) ("Here, the removal period began to run on . . . , the date that Petitioner's removal order was reinstated after his reentry into the United States.").

Here, Petitioner's removal order was reinstated, and his 90-day removal period began, on May 15, 2026.  (Doc. 11 at 2–4.)  He is therefore still in the 90-day period of statutorily mandated detention, and will be until August 13, 2026.  Accordingly, to the extent the Amended Petition seeks immediate release, it is **DENIED without prejudice**.

**B.   Third Country Removal**

Petitioner also claims that "ICE's policies threaten his removal to a third country without adequate notice and an opportunity to be heard," in violation of the Fifth Amendment and CAT.  (Doc. 9 at 12–13.)  Respondents argue that this claim is moot because they do not seek to remove Petitioner to a third country, but to Mexico.  (Doc. 11 at 4.)  Because Petitioner is a citizen of Cuba and was ordered removed to Cuba (*see* Doc. 11-1 at 7–10), and Respondents seek to remove him to Mexico, Petitioner's third-country claim is not moot.  The Court **ORDERS** that Petitioner be provided notice and a meaningful opportunity to be heard before any attempted third-country removal.

In support of his argument here, Petitioner discusses the July 9, 2025 memo from former ICE Director Todd Lyons ("ICE Memo") titled "Third Country Removals Following the Supreme Court's Order in *Department of Homeland Security v. D.V.D.*, No.

4

24A1153 (U.S. June 23, 2025)." (Doc. 1 at 40.)  The ICE Memo reads:

> If the United States has received diplomatic assurances from the country of removal that [noncitizens] removed from the United States will not be persecuted or tortured, and if the Department of State believes those assurances to be credible, the [noncitizen] may be removed without the need for further procedures. ICE will seek written confirmation from the Department of State that such diplomatic assurances were received and determined to be credible. . . .  In all other cases, ICE must comply with the following procedures:
>
> - An ERO officer will serve on the alien the attached Notice of Removal.  The notice includes the intended country of removal and will be read to the alien in a language he or she understands.
>
> - ERO will <u>not</u> affirmatively ask whether the alien is afraid of being removed to the country of removal.
>
> - ERO will generally wait at least 24 hours following service of the Notice of Removal before effectuating removal. In exigent circumstances, ERO may execute a removal order six (6) or more hours after service of the Notice of Removal as long as the alien is provided reasonable means and opportunity to speak with an attorney prior to removal.
>
> - Any determination to execute a removal order under exigent circumstances less than 24 hours following service of the Notice of Removal must be approved by the DHS General Counsel, or the Principal Legal Advisor where the DHS General Counsel is not available.
>
> - If the alien <u>does not</u> affirmatively state a fear of persecution or torture if removed to the country of removal listed on the Notice of Removal within 24 hours, ERO may proceed with removal to the country identified on the notice. ERO should check all systems for motions as close in time as possible to removal.
>
> - If the alien <u>does affirmatively state</u> a fear if removed to the country of removal listed on the Notice of Removal, ERO will refer the case to U.S. Citizenship and Immigration Services (USCIS) for a screening for eligibility for protection under section 241(b)(3) of the INA and the Convention Against Torture (CAT).  USCIS will generally screen the [noncitizen] within 24 hours of referral.

5

3:26-cv-02796-RBM-AHG

*Tan-Gutierrez v. Noem*, Case No.: 3:26-cv-00152-RBM-BJW, 2026 WL 194747, at *5 (S.D. Cal. Jan. 26, 2026).

As several courts have held, the policies in the ICE memo are "contrary to Ninth Circuit precedent." *Vu v. Noem*, No. 1:25-cv-01366-KES-SKO (HC), 2025 WL 3114341, at *9 (E.D. Cal. Nov. 6, 2025) (collecting cases). A "noncitizen must be given sufficient notice of a country of deportation that, given his capacities and circumstances, he would have a reasonable opportunity to raise and pursue his claim for withholding of deportation." *Nguyen v. Scott*, 796 F. Supp. 3d 703, 727 (W.D. Wash. 2025) (quoting *Aden v. Nielsen*, 409 F. Supp. 3d 998, 1009 (W.D. Wash. 2019)). "Both the due process clause and the governing statute place the burden on the government . . . to provide a meaningful opportunity to be heard on asylum and withholding claims." *Nguyen*, 796 F. Supp. 3d at 727 (quoting *Aden*, 409 F. Supp. 3d at 1009). "Failing to notify individuals who are subject to deportation that they have the right to apply . . . for withholding of deportation to the country to which they will be deported violates both INS regulations and the constitutional right to due process." *Andriasian v. INS*, 180 F.3d 1033, 1041 (9th Cir. 1999).

The court in *Esmail v. Noem* analyzed how the policies in the ICE Memo "present due process issues." Case No. 2:25-cv-08325-WLH-RAO, 2025 WL 3030589, at *6–7 (C.D. Cal. Sept. 26, 2025). First, when the third country "has provided diplomatic assurances that [noncitizens] removed from the United States will not be persecuted or tortured . . . the [noncitizen] may be removed *without the need for further procedures*." *Id.* at *7 (emphasis in original). Because "the due process clause and the governing statute place the burden on the government . . . to provide a meaningful opportunity to be heard on asylum and withholding claims, this approach is insufficient." *Id.* (cleaned up). Second, when the third country has not provided such assurances, ICE "will not affirmatively ask whether the [noncitizen] is afraid of being removed to that country." *Id.* This "forces the noncitizen to assert a right he may not know that he has," which "'violates both INS regulations and the constitutional rights to due process.'" *Id.* (cleaned up) (quoting *Andriasian*, 180 F. 3d at 1041). This Court finds the reasoning and conclusion in *Esmail*

6

3:26-cv-02796-RBM-AHG

persuasive and adopts them here. *Accord Nguyen*, 796 F. Supp. 3d at 728–29 (granting preliminary injunction because the petitioner was "likely to succeed on his claim that removal to a third country under ICE's current policy, without meaningful notice and reopening of his removal proceedings for a hearing, would violate due process"); *Nadari v. Bondi*, 2:25-cv-07893-JLS-BFM (C.D. Cal. Sept. 3, 2025), ECF No. 9, at *5–6 (same).

Accordingly, to the extent the Amended Petition seeks notice and an opportunity to be heard regarding attempted third-country removal, it is **GRANTED**.

## IV.   CONCLUSION

For the foregoing reasons, the Amended Petition (Doc. 9) is **GRANTED in part** and **DENIED in part**.

1. To the extent Petitioner seeks immediate release, the Amended Petition is **DENIED without prejudice**.  If Petitioner has not been removed by August 13, 2026, he may file a second amended Petition.

2. Respondents and their officers, agents, employees, attorneys, and persons acting on their behalf or in concert with them are **PROHIBITED** from removing Petitioner to a third country without notice and a meaningful opportunity to be heard, following the process laid out in *D.V.D. v. United States Dep't of Homeland Sec.*, Civil Action No. 25-10676-BEM, 2025 WL 1453640 (D. Mass. May 21, 2025).[1]

3. The TRO Motion (Doc. 3) is **DENIED AS MOOT**.

**IT IS SO ORDERED**.

DATE:  June 15, 2026

_____
HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE

---

[1]  This relief has been granted in similar matters.  *See Louangmilith v. Noem*, 808 F. Supp. 3d 1139, 1145 (S.D. Cal. 2025); *Y.T.D. v. Andrews*, Case No. 1:25-CV-01100 JLT SKO, 2025 WL 2675760, at *13 (E.D. Cal. Sept. 18, 2025); *Kumar v. Wamsley*, 817 F. Supp. 3d 1059, 1074 (W.D. Wash. 2025).

3:26-cv-02796-RBM-AHG