UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

YANDY ERNESTO MACHIN-ROSAL,

Petitioner,

v.

MARKWAYNE MULLIN, et al.,

Respondents.

Case No.: 3:26-cv-02796-RBM-AHG

**ORDER GRANTING SECOND AMENDED PETITION FOR WRIT OF HABEAS CORPUS**

**[Doc. 15]**

Pending before the Court is Petitioner Yandy Ernesto Machin-Rosal's ("Petitioner") Second Amended Petition for Writ of Habeas Corpus ("Second Amended Petition") pursuant to 28 U.S.C. § 2241. (Doc. 15.) For the reasons set forth below, the Second Amended Petition is **GRANTED**.

## I. BACKGROUND

### A. Factual Background[1]

Petitioner is a citizen of Cuba who came to the United States in 2009 and became a lawful permanent resident. (Doc. 9-1 [Decl. of Yandy Ernesto Machin-Rosal ("Machin-Rosal Decl.")] ¶¶ 1–2; Doc. 11-1 at 4.) Between June 14, 2019 and February 5, 2025, Petitioner was arrested for the following: "False Statement to Obstruct Police;"

[1] Much of this section comes from the Court's previous Order. (*See* Doc. 13 at 1–2.)

"Use/Possess Drug Paraphernalia;" "Possess/Receive Stolen Vehicle;" "Battery Domestic Violence;" "Trespass (dismissed);" "False Statement to Obstruct Police Officer;" "Battery with a Deadly Weapon and Conspiracy to Commit Battery with a Deadly Weapon." (Doc. 11-1 at 4.)

On November 3, 2025, Petitioner was ordered removed to Cuba. (Doc. 11-1 at 7–10.) On November 17, 2025, Petitioner was physically removed to Mexico. (Doc. 11-1 at 12.) Petitioner attests that he "was sent to the border with Mexico and forced to walk across the border." (Machin-Rosal Decl. ¶ 5.) Petitioner was kidnapped while in Mexico and later reentered the United States. (*Id.* ¶¶ 5–6.) On January 16, 2026, Border Patrol agents encountered Petitioner near Boulevard, California and determined that he had illegally re-entered the United States. (Doc. 11-1 at 3–4.) Petitioner was "referred for prosecution under 8 U.S.C. § 1326(a)." (*Id.* at 4.) On April 10, 2026, "the government moved to dismiss the case against [Petitioner] . . . in the interests of justice," and Judge Huie granted the motion to dismiss. (Doc. 9 at 3.) After the dismissal, Petitioner was brought back to immigration detention at Otay Mesa Detention Center. (*Id.*)

On April 14, 2026, the Department of Homeland Security issued Petitioner a Notice of Intent / Decision to Reinstate Prior Order under Immigration and Nationality Act § 241(a)(5). (Doc. 11-1 at 12.) On May 15, 2026, Immigration and Customs Enforcement ("ICE") "reinstated the prior removal order as a final order of removal" and placed Petitioner into custody pursuant to 8 U.S.C. § 1231(a). (Doc. 11 at 2; Doc. 11-1 at 14–15.) "About a month ago, an ICE agent spoke to [Petitioner] and asked him if he wanted to be removed to Mexico." (Doc. 15 at 3 (citing Doc. 15-1 [Second Decl. of Yandy Ernesto Machin-Rosal ("Second Machin-Rosal Decl.")] ¶¶ 2–4).) Petitioner told the agent that "he did not consent to be removed to Mexico." (*Id.*) "No other information has been provided to [Petitioner] regarding ICE's efforts to remove him." (*Id.*)

**B. Procedural Background**

Petitioner, initially proceeding *pro se*, filed his original Petition on April 30, 2026. (Doc. 1.) The Court appointed Federal Defenders of San Diego, Inc. as counsel and set a

briefing schedule. (Doc. 4.) On May 20, 2026, Petitioner filed his Amended Petition. (Doc. 9.) The Amended Petition was fully briefed on June 3, 2026, and the Court granted in part and denied in part the Amended Petition on June 15, 2026. (*See* Docs. 11–14.) In that Order, the Court denied Petitioner's *Zadvydas v. Davis*, 533 U.S. 678 (2001) claim because Petitioner's detention was mandated under 8 U.S.C. § 1231(a) until August 13, 2026. (Doc. 13 at 7.) The Court authorized Petitioner to file a Second Amended Petition if he had not been removed after that date. (*Id.*) After the 90-day mandatory detention period expired, Petitioner filed the Second Amended Petition. (Doc. 15.) On August 25, 2026, Respondents filed their Return. (Doc. 19.) On September 1, 2026, Petitioner filed his Traverse. (Doc. 20.)

## II. <u>LEGAL STANDARD</u>

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). "Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." 28 U.S.C. § 2241(a). The petitioner bears the burden of demonstrating that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." *Id.* § 2241(c)(3).

## III. <u>DISCUSSION</u>

Petitioner argues that his detention violates *Zadvydas v. Davis*, 533 U.S. 678 (2001), because there is no significant likelihood of his removal in the reasonably foreseeable future. (Doc. 15 at 2–8.) Respondents argue that: (1) Petitioner's detention still falls within the six month presumptively reasonable detention period; (2) ICE is making progress in securing Petitioner's removal, as only a few weeks have passed since Cuba declined repatriation; and (3) "Petitioner's conduct in reusing to leave the United States [to Mexico] is akin to an individual who seeks to undermine and frustrate the removal process by failing

to cooperate with ICE." (Doc. 19 at 3–7.) The Court agrees with Petitioner.

Section 1231(a) "authorizes the detention of noncitizens who have been ordered removed from the United States." *Johnson v. Arteaga-Martinez*, 596 U.S. 573, 575 (2022). Under this statute, a noncitizen ordered removed must be detained for 90 days pending the government's efforts to secure the noncitizen's removal. 8 U.S.C. § 1231(a)(2). Section 1231(a)(6) "authorizes further detention if the Government fails to remove the [noncitizen] during those 90 days." *Zadvydas*, 533 U.S. at 682. This further detention, however, is limited to "a period reasonably necessary to bring about [the noncitizen's] removal from the United States" and "does not permit indefinite detention." *Id.* at 689. "Once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 701 (citation modified). In that case, the noncitizen's release "may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the [noncitizen] may no doubt be returned to custody upon a violation of those conditions." *Id.* at 700.

**1. Presumption of Reasonableness**

Respondents argue that the Petition must be dismissed because Petitioner's detention still falls within the six months of post-removal confinement that *Zadvydas* found to be presumptively reasonable. (Doc. 19 at 3–5.) Petitioner argues that he may challenge his detention as unconstitutional because the 90-day statutory removal period has expired and circumstances here justify rebutting the presumption of reasonableness. (Doc. 15 at 4–6.)

In *Zadvydas*, the Supreme Court recognized a six-month presumptively reasonable period of detention after a noncitizen's removal order becomes final. 533 U.S. at 701. "After this 6-month period, once the [noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* The Supreme Court later clarified its holding in *Zadvydas* and explained that:

> *Zadvydas* did not hold that the statute authorizes detention until it approaches constitutional limits; it held that, since interpreting the statute to authorize

> indefinite detention (one plausible reading) would approach constitutional limits, the statute should be read (in line with the other plausible reading) to authorize detention *only for a period consistent with the purpose of effectuating removal*. . . . If [it] were, as the Government seems to believe, free to 'interpret' statutes as becoming inoperative when they 'approach constitutional limits,' [the Supreme Court] would be able to spare [itself] the necessity of ever finding a statute unconstitutional as applied.

*Clark v. Martinez*, 543 U.S. 371, 384 (2005) (emphasis added).

Multiple district courts have found that the six-month presumption is rebuttable. *See Hoang Trinh v. Homan*, 333 F. Supp. 3d 984, 994 (C.D. Cal. 2018) ("The Supreme Court in *Zadvydas* outlined a 'guide' for approaching these detention challenges . . . not a prohibition on claims challenging detention less than six months.") (quoting *Zadvydas*, 533 U.S. at 700–01); *Trinh v. Homan*, 466 F. Supp. 3d 1077, 1092 (C.D. Cal. 2020) ("At no point did the *Zadvydas* Court preclude a noncitizen from challenging their detention before the end of the presumptively reasonable six-month period."); *Huan v. Noem*, Case No.: 26-CV-512 JLS (DEB), 2026 WL 412609, at *2 (S.D. Cal. Feb. 13, 2026) (collecting cases); *Clark*, 543 U.S. at 387 (O'Connor, J., concurring) ("[T]he 6-month presumption . . . in *Zadvydas* . . . , is just that—a presumption."). Under Respondents' proposed interpretation of this regulation, "the Government would be permitted to detain noncitizens ordered removed for up to six months even when their removal is impossible." *Zavvar v. Scott*, Civil Action No. 25-2104-TDC, 2025 WL 2592543, at *5 (D. Md. Sept. 8, 2025). The Court agrees with these courts' reasoning and finds that the six–month presumption in *Zadvydas* is rebuttable.

The Court also finds that Petitioner has rebutted the six-month presumption here. He claims that he cannot be removed to Cuba because "there is no repatriation agreement between the United States and Cuba for those who, like [Petitioner], entered prior to 2017." (Doc. 15 at 7 (citing Doc. 9 at 10–11 (citing a 2017 joint statement signed by Cuba and the United States)).) He also claims that he cannot be removed to Mexico because Mexico will not accept citizens of other countries without their consent to being removed to Mexico. (*Id.* (citing *Gaceran-Jimenez v. Marin*, Case No.: 5:26-cv-01973-BFM, 2026 WL

2262177, at *2–3 (C.D. Cal. Aug. 5, 2026) and *Arenado-Borges v. Bondi*, CASE NO. 2:25-cv-02193-JNW, 2025 WL 3687518, at *4 (W.D. Wash. Dec. 19, 2025)).) Petitioner attests that he will not consent to being removed to Mexico because the last time he was removed to Mexico, he was kidnapped. (Machin-Rosal Decl. ¶¶ 5–6; Second Machin-Rosal Decl. ¶ 2.) For these reasons, the Court finds that Petitioner has rebutted the presumption of reasonableness. *Accord Gaceran-Jimenez*, 2026 WL 2262177, at *3 (concluding the same under nearly identical circumstances).

**2. Significant Likelihood of Removal in the Reasonably Foreseeable Future**

As Petitioner has rebutted the six-month presumption and "provide[d] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the burden shifts to Respondents to "respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701. Respondents have not met their burden. They represent that "ICE ERO requested removal to Cuba but, on August 4, 2026, Cuba declined [Petitioner's] repatriation." (Doc. 19 at 5 (citing Decl. of Martin Parsons ("Parsons Decl.") ¶ 12).) Officer Parsons attests that "ERO is looking to remove Petitioner to a third country and is currently working on identifying a third country for removal." (*Id.* ¶ 13.)

But courts in this District, including this Court, have found that the Government failed to meet its burden on facts far more favorable to them than those present here. *See, e.g.*, *Phan v. Warden of Otay Mesa Det. Facility*, 813 F. Supp. 3d 1179, 1186–87 (S.D. Cal. 2025) (holding that the Government failed to sufficiently rebut even though it had already submitted a travel document request to ICE headquarters because it "conceded that the travel document request had yet to be submitted to Vietnam, provided no estimate for when it would be submitted, and provided no estimate for how long it would take for Vietnam to respond") (citation modified); *Conchas-Valdez v. Casey*, No. 25-cv-02469-DMS-JLB, 2025 WL 2884822, at *3 (S.D. Cal. Oct. 6, 2025) ("[T]he Government's minimal work on this case—one resettlement request and two follow up emails over the course of seven months—[does] not instill confidence that it will be able to secure [the petitioner's] removal in the reasonably foreseeable future."); *Alkhafaji v. Mullin*, Case No.:

3:26-cv-02262-RBM-BJW, 2026 WL 1862613, at *4–5 (S.D. Cal. June 29, 2026) (holding that the Government failed to sufficiently rebut because it had "not identified a third country to which they plan to remove Petitioner, much less a travel document or . . . an estimate for how long it would take for the third country to respond"). Even if ICE were to identify a third country, Petitioner's removal to that country would still require the affirmative assent of the receiving country. *See* 8 U.S.C. § 1231(b)(2)(E)(vii). And even then, Petitioner's removal would be unlikely in the "reasonably foreseeable future" because he would be "entitled to raise a fear-based challenge to his removal to any other country than [Cuba], resulting in potentially additional, lengthy proceedings." *Ndandu v. Noem*, 819 F. Supp. 3d 1155, 1162 (S.D. Cal. 2026) (citation modified).

Respondents also argue that Petitioner's refusal to consent to removal to Mexico should be fatal to his *Zadvydas* claim. (Doc. 19 at 6–7.) Specifically, they argue that "Petitioner's conduct in refusing to leave the United States is akin to an individual who seeks to undermine and frustrate the removal process by failing to cooperate with ICE." (*Id.* (citing *Pelich v. INS*, 329 F.3d 1057, 1060 (9th Cir. 2003) ("Unlike the [noncitizens] in *Zadvydas*, Pelich has the keys to freedom in his pocket and could likely effectuate his removal by providing the information requested by INS.").)

"Under Ninth Circuit law, a noncitizen 'who impedes [ ] removal efforts has not met his burden of showing that there is no significant likelihood of removal in the reasonably foreseeable future.'" *Batista v. Mullin*, Case No.: 3:26-cv-04052-JO-JAC, ECF No. 12 (S.D. Cal. Aug. 31, 2026) (quoting *Pelich*, 329 F.3d at 1060 (finding a Polish native impeded removal efforts when he refused to fill out a Polish passport and provided "conflicting information regarding his name, his parents' names, his parents' birthplaces and residences, his birthplace and his nationality")). But these impediments "pertain[] only to intentionally obstructionist, bad faith tactics that are designed to frustrate the government's attempts to effectuate a removal order." *Diouf v. Mukasey*, 542 F.3d 1222, 1232 (9th Cir. 2008); *see also Lema v. INS*, 341 F.3d 853, 855–56 (9th Cir. 2003) (finding an Ethiopian native impeded removal efforts when he falsely represented to the Ethiopian

consulate that he was Eritrean, thereby preventing his removal to Ethiopia); *Zerai v. Noem*, No. 5:26-cv-00972-AYP, 2026 WL 145931, at *7 (C.D. Cal. May 14, 2026) ("Failure to self-deport does not equal a failure to assist with securing travel documents."); *Seretse-Khama v. Ashcroft*, 215 F. Supp. 2d 37, 51 (D.D.C. 2002) (finding no impediment to removal where the petitioner "honestly told the Consul that he did not want to return to Liberia"); *Batista*, Case No.: 3:26-cv-04052-JO-JAC, ECF No. 12 ("By truthfully informing officials that he did not want to go to Mexico, [the petitioner] has not engaged in the type of bad faith obstructionist conduct that would preclude *Zadvydas* relief.").

Here, Petitioner has not lied about his country of origin, *see Lema*, 341 F.3d at 855–56, or refused to apply for travel documents to his country of origin, *see Pelich*, 329 F.3d at 1060, such that his bad faith efforts have caused his inability to be removed. Rather, he merely explained that he did not consent to removal to Mexico, and as a result did not satisfy Mexico's voluntariness requirement for third-country deportees. *See Gaceran-Jimenez*, 2026 WL 2262177, at *3 (noting "[t]he consensus among the federal courts of this Circuit is that . . . Mexico refuses to accept citizens of countries other than Mexico who do not consent to removal to Mexico"); *Abramian v. Bondi*, 820 F. Supp. 3d 1050, 1059 (C.D. Cal. 2026) (finding that "*Pelich* and *Lema* do not compel denial" where the petitioners objected to being removed to Eritrea, "a third country with which they have no connections and in which they fear harm").

In summary, Petitioner has established that his removal is not significantly likely in the reasonably foreseeable future. Respondents have not sufficiently rebutted that showing. Therefore, Petitioner's detention is no longer reasonable or authorized by statute.

## IV. CONCLUSION

For the foregoing reasons, the Second Amended Petition (Doc. 15) is **GRANTED**. Respondents are **ORDERED** to immediately release Petitioner from custody, subject to "appropriate conditions" of supervision to be determined by immigration authorities and in accordance with applicable statutory and regulatory procedures. *See Zadvydas*, 533 U.S. at 700; *Vlasov v. Bondi*, Case No.: 25-cv-1342-AJB-MSB, 2025 WL 2258582, at *3 (S.D.

Cal. Aug. 7, 2025).

**IT IS SO ORDERED**.

DATE: September 3, 2026

HON. RUTH BERMÚDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE